For the Petitioner:
 JOHN WATSON ASSISTANT PUBLIC DEFENDER
For the Respondent:
 JOAN ALEXANDER ASSISTANT STATE'S ATTORNEY
DECISION
THE COURT: The petitioner, Jose Antonio Cruz, claims that his attorney either misinformed or misrepresented to him the recommended sentence of the Court, or the prosecutor to the Court, and on that basis — that is, on the basis of the misrepresentation or misinformation, he pleaded guilty. He claims that, as a result, he has been denied the effective assistance of counsel, and consequently a denial of his constitutional rights. He further claims that his plea was involuntary; it was not knowingly, intelligently and/or voluntarily made.
The plaintiff testified, and in all candor, this Court found his testimony incredible.
The transcripts of February 17th and September 22d 1988 without any other evidence, effectively refute every one of his claims, and I will read into the record exactly those portions of the transcript that this Court is referring to.
With respect, first of all, to the transcript of February 17, 1988 when the petitioner entered his pleas of guilty to the underlying narcotics offenses before Judge Byrne, on page five:
"THE COURT: Before I accept your guilty plea, sir, I have to ask you some questions so that I may make sure that your pleas are voluntarily and understandingly made. If you don't understand my questions, please let me know, and I'll change them or alter them so that you do understand them. You have to answer out loud and keep your voice up so the court monitor can record your answers."
And I note, and I effectively stress the fact that this was a court monitor, which means that the petitioner's voice or verbal responses were being CT Page 7363 recorded on tape.
The Court says, "Do you understand?"
The defendant responds, "Yes, sir."
"The Court: You don't need the services of the interpreter?
"The Defendant: No.
"The Court: Okay. Now, how old are you? — I am thirty-seven years old.
"The Court: How old? — Thirty-seven years old.
"Now, you're presently out on bond on these cases, are you? — Yeah.
"Are you married or single? — I'm divorced.
"You have a family? — Yeah.
"What do you have for a family? — I got four kids.
"Are you employed? — I used to.
"What did you do? — I used to drive truck for Pratt and Whitney.
"And how far did you go in school? — Sophomore.
"Mr. Gerace: Sophomore.
"The Court: Sophomore in high school? Are you right now under the influence of alcohol, drugs or medication of any kind? — No."
Now, that's with regard to the transcript of February 17th.
With regard to the transcript of September 22, 1988, which is when he entered his plea of guilty to the failures to appear and was sentenced by Judge Higgins, I refer first of all to page seventeen of that transcript and the question of whether or not Mr. Cruz was on probation arose at this point in the plea canvass. CT Page 7364
The Court asks Mr. Cruz, "You don't remember that?" — referring to some offense that may have resulted in probation.
"Mr. Cruz: I remember one time I had a fight with my wife.
"You were arrested? — Yes.
"You were charged with assault? — No. I broke the door and I paid one hundred dollars.
"Did you plead guilty or did they find you guilty of assault? — I don't remember. I know paid one hundred dollars."
Then I would direct everyone's attention to page twenty of that same transcript.
"All right. You worked for Pratt and Whitney.
What did you do? — Driving truck.
"How long? — Almost eighteen years I am married and four kids.
"You have been doing some drinking too, Mr. Cruz? — Yes.
"You got your life pretty well screwed up between the booze and the drugs. — Yes."
Those citations, and this is only partial citations from the two transcripts, are clear indication to this Court that Mr. Cruz was fully conversant, able to understand and able to respond in the English language. He was asked very precisely on February 17th, 1988 whether or not he needed an interpreter and he responded in the negative.
Now, with regard to the claim that Judge Higgins failed to comply with the requirements of Section 712 of the Practice Book in canvassing the plea, the Court finds, first of all, that you cannot read the canvass just dissected or read one little part and base an opinion on that. If you read the canvass in total, I think that Section 712 of the Practice Book was complied with very ably, and I think the Court conducted a very fine canvass of the defendant. CT Page 7365
There's one other thing that came out in evidence and which I found credible, and that was the testimony of Mr. O'Connell to the effect that the very morning of his sentencing, Mr. Gerace met with him. That's my recollection of his testimony.
Finally, in reading the presentence investigation report, there's no indication there that the probation officer who prepared the report needed the services of an interpreter.
The Court finds that the petitioner has not sustained his burden of proof. Accordingly, the petition for a writ of habeas corpus is dismissed.
CERTIFICATION
I hereby certify that the foregoing is a true and correct transcript from the tapes of the proceedings held in the above-entitled case heard before the Honorable Howard Scheinblum, Superior Court Judge, Judicial District of Tolland, Rockville, Connecticut on the 28th day of August, 1991 .
Dated this 23nd day of September, 1991 at Rockville, Connecticut.
June C. DePolito Court Monitor